PROB 12C
(Rev.2011)

# United States District Court
## for
## Middle District of Tennessee

## Superseding Petition for Warrant for Offender Under Supervision
## (Supersedes Petition Filed as Docket Entry No. 68)

Name of Offender: <u>Dakota James Calderhead</u>  Case Number: <u>1:12-00011-01</u>

Name of Sentencing Judicial Officer: <u>The Honorable Todd J. Campbell, U.S. District Judge</u>

Date of Original Sentence: <u>August 23, 2013</u>

Original Offense: <u>18 U.S.C. § 241 Conspiracy to Violate Civil Rights</u>

Original Sentence: <u>Six months' custody and 2 years' supervised release</u>

Type of Supervision: <u>Supervised Release</u>  Date Supervision Commenced: <u>January 24, 2014</u>

Assistant U.S. Attorney: <u>Harold B. McDonough, Jr.</u>  Defense Attorney: <u>Caryll Alpert</u>

### PETITIONING THE COURT
____ To issue a Summons.
____ To issue a Warrant.
__X__ To Consider Additional Violations/Information.

**THE COURT ORDERS:**
☐ No Action
☐ The Issuance of a Warrant:
 ☐ Sealed Pending Warrant Execution
  (cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☒ The Consideration of Additional Violations/Information.
☐ Other

Considered this 10 day of June, 2014, and made a part of the records in the above case.

_____
Todd J. Campbell
U. S. District Judge

I declare under penalty of perjury that the foregoing is true and correct. Respectfully submitted,

_____
Joshua Smith
U. S. Probation Officer

Place  <u>Nashville, TN</u>

Date  <u>June 9, 2014</u>

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. <u>68</u>, has been amended as follows:

    Violation No. 3 - has been amended to include additional information  
    Violation No. 7 - has been added  
    Violation No. 8 - has been added  
    Sentencing Recommendation Page has been updated to reflect a Grade B violation

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation No. | Nature of Noncompliance |
|---|---|
| 1. | **The defendant shall participate and successfully complete a residential reentry center (RRC) placement not to exceed 180 days as directed by the probation officer. While participating in the RRC placement, the defendant shall obtain gainful employment and establish a savings account. (This condition was recommended in lieu of the condition for home detention as the defendant was homeless.)** |

On March 4, 2014, Director Doris of Diersen Charities, the defendant's counselor, and the probation officer met with Mr. Calderhead to discuss his disrespectful and manipulative behaviors toward staff and other residents. An unauthorized cell phone was confiscated by RRC staff with nude pictures in the phone. As a result of the phone being taken away, Mr. Calderhead began making threats about harming himself. On March 20, 2014, Mr. Calderhead met with his counselor to discuss selling the "Contributor" newspaper. He was informed that it was not appropriate employment while residing at the RRC. As a result of the employment not being approved, the offender became extremely disrespectful and began aggressively cursing at his counselor for lack of income. On March 21, 2014, Mr. Calderhead was terminated from the RRC for his failure to alter his aggressive and impulsive behaviors.

| 2. | **The defendant shall participate in a mental health program as directed by the Probation Officer.** |
|---|---|

On March 18, 2014, Mr. Calderhead reported an hour late for mental health treatment. He failed to report for treatment on March 20, and March 27, 2014, and has failed to reschedule an appointment. His next medication management appointment is scheduled for April 28, 2014.

Mr. Calderhead has been in compliance with mental health treatment by attending appointments as scheduled and taking medication as prescribed since April 8, 2014. The Federal Public Defender's Office and the U.S. Probation Office have assisted and monitored his compliance.

| 3. | **The defendant shall not commit another federal, state or local crime.** |
|---|---|

On March 25, 2014, Mr. Calderhead was issued a citation by an officer with the Metropolitan Nashville Police Department for trespassing. According to Mr. Calderhead, he was sleeping in a pavilion area that was private property when he was issued the citation. He is required to report for booking on April 14, 2014, for the citation. On April 14, 2014, Mr. Calderhead reported for booking on the citation for Criminal Trespassing. His next court date is scheduled for June 18, 2014, in Davidson County General Sessions Court.

On April 24, 2014, Mr. Calderhead was issued citations by an officer with the Metropolitan Nashville Police Department for Obstructing Highway or Passengeway and Resisting Arrest.

The citations were issued at 7:20 p.m. According to the affidavits, Mr. Calderhead was asked to move his luggage from a sidewalk at 3rd Street and Broadway. He refused and stated that he did not have to move his luggage. He was issued the citation for Resisting Arresting for refusing to be handcuffed and for putting his hands in front of his body to make it difficult for officers to handcuff him. On April 25, 2014, Mr. Calderhead informed the probation officer of the citations from the previous evening. He stated that he did not believe that he was required to move his luggage as it was a public walkway. He was required to report for booking on May 19, 2014, at 9 a.m. **There are two outstanding warrants with the Metropolitan Nashville Police Department for Mr. Calderhead as a result of his failure to appear on May 19, 2014.**

4. **The defendant shall reside in the evenings at the Nashville Rescue Mission.**

    On April 8, 2014, Mr. Calderhead was released from custody with the additional condition ordered by The Honorable E. Clifton Knowles, U. S. Magistrate Judge, to reside at the Nashville Rescue Mission in the evenings. Since his release on April 8, 2014, he has reported to the probation officer that he has resided at the Nashville Rescue Mission each evening.

    On April 24, 2014, the probation officer met with staff from the Mission to verify Mr. Calderhead's compliance with the requirement. The probation officer was informed that Mr. Calderhead had not spent the evening at the Mission since April 12, 2014.

    On May 12, 2014, Mr. Calderhead met with the probation officer and reported that he has not been regularly staying at the Mission as he has been threatened and frequently pressured to be involved in prostitution. He reported staying most evenings on the street or in the courtyard at a local church. On May 15, 2014, the Mission was contacted and reported that Mr. Calderhead has not stayed at their facility since April 28, 2014.

5. **The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.**

    Mr. Calderhead had been instructed to report daily to the probation office. He has failed to report since May 13, 2014.

6. **The defendant shall not leave the judicial district without the permission of the court or the probation officer.**

    On May 16, 2014, the probation officer had phone contact with Officer Tom D'Anna of the Steger Police Department in Steger, Illinois. Officer D'Anna reported that he had contact with Mr. Calderhead and two other individuals who were reportedly hitchhiking after a report was made of homeless people feeding birds near a shopping plaza. Mr. Calderhead and his associates were given directions to a shelter in St. John, Indiana.

7. **The defendant shall not commit another federal, state or local crime.**

    **On May 18, 2014, Mr. Calderhead was arrested by the Steger Police Department in Steger, Illinois, and charged with Retail Theft. According the police report, officers responded to a local K-Mart. Upon the arrival of the officers, two white males were observed fleeing the store, matching the description given by store officials. Upon arrest, Mr. Calderhead was determined to be one of the subjects involved in the theft. The stolen items were a combination of various food and beverage items with a total**

value of $42.28. Mr. Calderhead was issued a civil citation and given a court date reportedly in June 2014.

8. **The defendant shall not commit another federal, state or local crime.**

On May 24, 2014, Mr. Calderhead was arrested by the Columbus Police Department in Columbus, Ohio. He was transferred the U.S. Marshals Service on May 30, 2014.

On May 27, 2014, the probation officer had telephonic contact with an officer from the Columbus Police Department and was informed that Mr. Calderhead was under investigation for sexual conduct with a minor. On June 3, 2014, the probation officer was informed by an officer with the Columbus Police Department that on May 31, 2014, Mr. Calderhead was charged with Unlawful Sexual Conduct with a Minor. According to the investigation summary, on May 24, 2014, officers responded to a possible sexual assault. Upon arrival, multiple individuals were restraining a suspect that they believed had raped a fourteen year old female. The responding officers arrested the suspect, later identified as Mr. Calderhead. The victim, Ms. Messer, was transported to the local children's hospital. Ms. Messer reported having met Mr. Calderhead on Facebook, and the two of them had been reportedly communicating for over a year. They had always reportedly known each other's ages. She informed that Mr. Calderhead came to Columbus, Ohio, from Nashville, Tennessee, to see her. Ms. Messer stated she snuck out of her house and had been with Mr. Calderhead for four days "walking the streets" and sleeping in the woods. Ms. Messer stated that they had intercourse on four different occasions, and some of it was consensual but some was forced. She stated that she did want to have sex with him or stay with him, but he would pressure her into it. Ms. Messer and Mr. Calderhead eventually walked back to the area near Ms. Messer's home. Mr. Calderhead stayed in the woods, and Ms. Messer went home and told her mother she had been raped. Ms. Messer told her mother where Mr. Calderhead would be, and her mother and a couple of friends found Mr. Calderhead, chased him down on foot, and detained him until the police arrived.

Mr. Calderhead was interviewed and admitted knowing Ms. Messer was only fourteen years old and that they had intercourse at least twice in the last four days. He stated that he did not force Ms. Messer to stay with him or to have sex with him and that he loves her. An indictment is being requested with the Franklin County grand jury for the charges.

**Compliance with Supervision Conditions and Prior Interventions:**

Mr. Calderhead began his term of supervised release on January 24, 2014. His supervision is scheduled to terminate on January 23, 2016.

Upon release from custody, Mr. Calderhead was homeless and the Court modified his conditions of supervision to allow him to reside at Diersen Charities in lieu of the home confinement condition. Mr. Calderhead entered Diersen Charities on January 28, 2014.

On February 12, 2014, a report requesting no action was submitted to the Court to inform that Mr. Calderhead tested positive for marijuana on January 27, 2014, and admitted to use of marijuana prior to his release from the Bureau of Prisons. No action was taken by the Court at that time.

On February 21, 2014, a mental health assessment was completed for Mr. Calderhead. During the assessment, he reported that he has always been suicidal and worries about hurting others and himself. He reported having a history of homicidal ideation with a plan, but he stated he had never gone through with it. He denied having homicidal thoughts during the intake assessment, but he reported often having suicidal thoughts. He reported waking up screaming and having flashbacks of both physical abuse all his life and

sexual abuse at one period of his life. He reported having panic attacks and having moods fluctuations that caused him to feel really happy some moments and noted he enjoyed writing music about using drugs, killing animals, and killing women. He further reported self-injurious behavior via cutting and repeated that he often thinks about suicide. He was diagnosed with Bipolar I Disorder, Most Recent Episode Mixed, Severe Without Psychotic Features; Polysubstance Dependence; Posttraumatic Stress Disorder, Chronic; and Impulse-Control Disorder Not Otherwise Specified. Weekly individual therapy and a psychiatric evaluation for medication treatment with monthly medication management were recommended by the treatment provider. Mr. Calderhead has continued to participate in treatment since that time though he has not regularly reported for his treatment appointments as scheduled. While he resided at Diersen, he repeatedly threatened to harm himself.

On April 3, 2014, the probation office received the defendant's psychiatric evaluation which included the DSM Diagnosis. As it relates to Axis I and II, the evaluation indicates the following.

> Axis I - Impulse Control Disorder (NOS), Adjustment Disorder with mixed disturbance of emotions and conduct (chronic), Polysubstance dependence, Bipolar Disorder (most recent episode mixed, severe without psychotic features), Posttraumatic Stress Disorder (chronic), Depressive Disorder (NOS)
>
> Axis II - Mild mental retardation, Antisocial Personality Disorder (NOS)

The evaluation also indicates a moderate risk of suicide and no risk as it relates to physical violence/homicide.

On April 3, 2014, during a meeting with the probation staff, Mr. Calderhead reported having current mental health medication but irregularly taking the medication as evidenced by him not taking for the past two or three days. He currently has a limited supply of medication for his mental health concerns.

Since his termination from the RRC on March 21, 2014, Mr. Calderhead has remained homeless.

On April 3, 2014, a petition was submitted to the Court requesting a warrant for Mr. Calderhead and to inform that he had been terminated from the RRC placement, had failed to participate in mental health treatment as directed and had been issued a citation for criminal trespassing. On April 8, 2014, Mr. Calderhead was released from custody with the additional condition to reside in the evenings at the Nashville Rescue Mission.

Throughout the month of April 2014, as previously stated, the Federal Public Defender's Office and the Probation Office have assisted and monitored Mr. Calderhead with regard to his mental health treatment. Further resources have been explored to assist in obtaining income and housing stability for Mr. Calderhead. On April 15, 2014, prior to his appointment for mental health treatment, an application was completed for Safety Net, which would allow Mr. Calderhead to retain mental health treatment and case management services. On April 17, 2014, Mr. Calderhead completed an appointment with the Social Security Office in order to apply for benefits. On April 25, 2014, Mr. Calderhead met with a representative from Park Center to see if he would qualify for an expedited claim for benefits due to his significant mental health concerns and history of homelessness.

On April 23, 2014, a revocation hearing was held before Your Honor, and the hearing was continued until July 25, 2014. Your Honor advised the Probation Office to immediately notify the Court if Mr. Calderhead was not in compliance with supervised release conditions.

A petition was submitted to the Court on April 25, 2014, requesting a warrant and the consideration of additional violations. The petition noted that Mr. Calderhead was then in compliance with mental health treatment by attending appointments as scheduled and taking medications as prescribed since April 8, 2014.

A petition was submitted to the Court on April 25, 2014, requesting a warrant and the consideration of additional violations. The petition noted that Mr. Calderhead was then in compliance with mental health treatment by attending appointments as scheduled and taking medications as prescribed since April 8, 2014.

In addition, the petition noted that he had been issued two additional citations for Obstructing a Highway or Passageway and Resisting Arrest, and he had failed to reside at the Nashville Rescue Mission since April 12, 2014. The Court ordered consideration of the additional violations.

As previously stated, Mr. Calderhead was required to report daily to the probation office. He has failed to report since May 13, 2014.

**On May 16, 2014, a petition was submitted to the Court requesting a warrant, and the consideration of additional violations, to inform that Mr. Calderhead had continued to fail to reside at the Mission, had failed to report to the probation office since May 13, 2014, and that he had contact with law enforcement officers in Steger, Illinois. A warrant was ordered by The Honorable Juliet Griffin, U.S. Magistrate Judge, on May 20, 2014. As previously stated, Mr. Calderhead has remained in the custody of the U.S. Marshals since May 30, 2014.**

**U.S. Probation Officer Recommendation:**

It is respectfully requested that the additional violations of Mr. Calderhead be considered at the revocation hearing yet to be scheduled before Your Honor.

This matter has been reported to the U.S. Attorney's Office.

Approved: _____
Vidette Putman
Supervisory U. S. Probation Office

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. DAKOTA JAMES CALDERHEAD, CASE NO. 1:12-00011-01

**GRADE OF VIOLATION:** B
**CRIMINAL HISTORY:** III

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003          VCCA PROVISIONS

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 years  18 U.S.C. § 3583(e)(3) | 8-14 months  U.S.S.G. § 7B1.4(a) | No recommendation |
| SUPERVISED RELEASE: | 3 years less any term of imprisonment  18 U.S.C. § 3583(h) | 1-3 years less any term of imprisonment  U.S.S.G. § 5D1.2(a)(2) | No recommendation |

**Statutory Provisions:** 18 U.S.C. § 3583(e)(3) allows for revocation of supervised release and requires the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Pursuant to U.S.S.G § 7B1.3(a)(2), upon a finding a Grade B violation, the Court shall revoke supervised release.

Respectfully Submitted

_____
Joshua Smith
U. S. Probation Officer

Approved: _____
Vidette Putman
Supervisory U. S. Probation Officer

LF021
REV 05/01

# VIOLATION WORKSHEET

1. **Defendant**  Dakota James Calderhead

2. **Docket Number** *(Year-Sequence-Defendant No.)*  0650 1:12CR00011 - 1

3. **District/Office**  Middle District of Tennessee

4. **Original Sentence Date**  08 / 23 / 2013
   month   day   year

5. **Original District/Office** _____
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* _____

7. **List each violation and determine the applicable grade (see §7B1.1):**

| Violation(s) | Grade |
|---|---|
| failure to reside at halfway house for 180 days | C |
| failure to participate in mental health treatment | C |
| new criminal charges | C |
| failure to reside at the Mission in the evenings | C |
| failure to report as directed | C |
| leaving district without permission | C |
| new criminal charges | C |
| new criminal charges | B |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))*   **B**

9. **Criminal History Category** *(see §7B1.4(a))*   **III**

10. **Range of Imprisonment** *(see §7B1.4(a))*   **8-14** months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

   ☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

   ☒ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

   ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** Dakota James Calderhead

12. **Unsatisfied Conditions of Original Sentence**

    List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($) 692.65          Community Confinement _____

    Fine($) _____         Home Detention _____

    Other   Special Assessment $100   Intermittent Confinement _____

13. **Supervised Release**
    If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: 1 _____ to 3 _____ years

    If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

    Period of supervised release to be served following release from _____
    imprisonment:

14. **Departure**

    List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002